1  Spencer C. Skeen CA Bar No. 182216
   spencer.skeen@ogletree.com
2  Jesse C. Ferrantella CA Bar No. 279131
   jesse.ferrantella@ogletree.com
3  Cameron O. Flynn CA Bar No. 301830
   cameron.flynn@ogletree.com
4  OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
5  4660 La Jolla Village Drive, Suite 900
   San Diego, CA  92122
6  Telephone:  858-652-3100
   Facsimile:   858-652-3101

Attorneys for Defendant TTX COMPANY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOMINIC COATS on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TTX COMPANY, a Delaware corporation; and DOES 1 to 10, inclusive,<br><br>Defendant. | Case No. CaseNumber<br><br>**DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**<br><br>Complaint Filed: September 21, 2023<br>Trial Date:         Not Set |

Defendant TTX COMPANY ("TTX") hereby removes the above-entitled action ("Action") to the United States District Court for the Central District of California, Eastern Division under 28 U.S.C. §§ 1332(d) (the Class Action Fairness Act ["CAFA"]), and 1446. TTX does so on the grounds that: (1) minimal diversity exists between TTX, on the one hand, and Plaintiff DOMINIC COATS ("Plaintiff") and many of the putative class members, on the other hand; (2) the aggregate number of putative members amongst all proposed classes exceeds 100; and (3) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. All CAFA requirements are satisfied.

The foregoing facts were true when Plaintiff filed the Class Action Complaint ("Complaint") and remain true as of the date of filing this Notice of Removal. Removal jurisdiction is therefore appropriate as detailed more fully below.

## I. STATE COURT ACTION

1. Plaintiff filed the Complaint on September 21, 2023 in Riverside County Superior Court ("Action"), against TTX. (Declaration of Jesse C. Ferrantella ["Ferrantella Decl."], ¶ 2; Ex. 1, Complaint.) A copy of the Complaint packet is attached as **Exhibit 1**. The Action was assigned Case No. CVRI2304993 (*Id.*).

2. TTX accepted service via notice and acknowledgment of receipt on October 24, 2023. (Ferrantella Decl. ¶ 3: Ex. 2, Notice and Acknowledgment of Receipt.) A copy of the Notice and Acknowledgment of Receipt is attached as **Exhibit 2.**

3. TTX filed an Answer to Plaintiff's Complaint in the Riverside County Superior Court on November 27, 2023. (Ferrantella Decl., ¶ 4; Ex. 3, Answer.) A copy of the Answer to Plaintiff's Complaint is attached as **Exhibit 3.**

4. TTX received additional submissions in State court. A copy of the other process, pleadings, and orders provided to Defendant in this matter are attached as **Exhibit 4 and 5**. (Ferrantella Decl., ¶¶ 5-6.)

## II. REMOVAL IS TIMELY

5. The time to remove under 28 U.S.C. Section 1446(b) does not begin to run until receipt by the Defendant, through service or otherwise, of a pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. *Harris v. Bankers Life and Cas. Co.,* 425 F.3d 689, 694 (9th Cir. 2005). Here, the Complaint does not contain all facts and data to calculate the amount in controversy with reasonable certainty as to the individually named Plaintiff or as to the putative class. Accordingly, it is not possible to ascertain solely from the Complaint all facts and data that this case is removable, and, to date, TTX has not received any other document which would constitute an "other pleading, motion, order or other paper" providing this information. (*See* Ferrantella Decl.¶ 7.) Accordingly, the time to remove this action has not yet begun. Where the time to remove has not yet expired, a defendant may remove at any time if it uncovers evidence establishing that the case is removable. *Roth v. CHA Hollywood Medical Center, L.P.,* 720 F.3d 1121, 1125 (9th Cir. 2013). As set forth below, TTX has only recently discovered such evidence after collection and review of relevant records of the implicated employees and an analysis of the estimated damages based on reasonable assumptions drawn from the Complaint. Therefore, TTX is timely removing this case based on that information, as well as the allegations in the Complaint.

6. Even if it could be determined from the face of the Complaint that this action is removable, this Notice of Removal would still be timely. TTX was served with the Complaint and Summons on October 24, 2023. (Ferrantella Decl. ¶ 3; Exhibit 2, Notice and Acknowlgement of Receipt.) As such, the time to remove could not expire, at the earliest, until Monday, November 27, 2023, the first court day 30 days after service of the Complaint. 28 U.S.C. § 1446(b). This Notice is therefore timely, as it was filed by that date.

## III. REMOVAL IS PROPER UNDER CAFA

7. Removal is proper given Plaintiff's allegations and claims. Plaintiff's Complaint asserts causes of action on a class wide basis for: (1) failure to pay overtime; (2) failure to pay all wages; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) failure to furnish accurate wage statements and maintain records; (6) waiting time penalties, and (7) unfair business practices. (Ex. 1, Complaint.)

8. CAFA grants district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which (1) any member of a class of plaintiffs is a citizen of a state different from any defendant; (2) the number of members of all proposed plaintiff classes in the aggregate is over 100; and (3) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs. 28 U.S.C. § 1332(d). CAFA authorizes such removal under 28 U.S.C. § 1446.

9. This Court has original jurisdiction over the Action under CAFA because it is a civil case filed as a class action wherein at least one member of the putative class is a citizen of a State different from TTX, the number of individuals in the proposed classes in the aggregate is over 100, and the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

### A. CAFA's Diversity of Citizenship Requirement is Satisfied

10. CAFA's diversity requirement is satisfied "so long as 'any member of a class of Plaintiffs is a citizen of a State different from any defendant.'" *Bradford v. Bank of Am. Corp.*, No. CV 15-5201-GHK (JCX), 2015 WL 5311089, at *3 (C.D. Cal. Sept. 10, 2015) (citing *California v. IntelliGender, LLC*, 771 F.3d 1169, 1172 (9th Cir. 2014)); 28 U.S.C. §§ 1332(d)(2), 1453(a), (b).

11. Plaintiff is a resident of the State of California within the meaning of 28 U.S.C. § 1332(a). (Ex. 1, Complaint ¶ 9; Feeny Decl. ¶ 6.) Numerous putative class members are also residents of the State of California within the meaning of 28 U.S.C. § 1332(a). (Feeny Decl. ¶ 6.)

12. Under 28 U.S.C. § 1332(c)(1), a corporation shall be deemed to be a citizen of every State and foreign state in which it has been incorporated and of the State or foreign state where it has its principal place of business. A company's "'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities," i.e., the corporation's "nerve center." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010). The "nerve center" is normally where the corporation maintains its headquarters. *Id*.

13. TTX is, and at all times relevant to this action was, a citizen of Delaware and Illinois. TTX is a company organized under the laws of Delaware. Further, TTX's headquarters and principal place of business – where its operations are directed, controlled, and managed – is in Illinois. TTX has not been incorporated in California and has not had its headquarters, executive offices, or principal place of business in California. Accordingly, TTX is a citizen of Delaware and Illinois, and not a citizen of California. (Feeny Decl. ¶ 2.)

14. The CAFA diversity requirement has been met because Plaintiff (or any one of the numerous implicated employees) is a citizen of California and TTX is not; it is a citizen of Delaware and Illinois. Removal is therefore proper under 28 U.S.C. § 1332(d). *Serrano v. 180 Connect Inc.*, 478 F.3d 1018, 1019 (9th Cir. 2007).

### B. CAFA's Class Size Requirement Is Satisfied

15. Plaintiff purports to bring the Action on behalf of "[a]ll persons who have been, or currently are, employed by Defendants and who held, or hold, job positions which Defendants have classified as "non-exempt" employees in the State of California, at any time since four years prior to filing this action, through the date judgment is rendered in this action." (Complaint ¶ 47.)

16. TTX disputes Plaintiff's allegations and does not waive any rights to challenge Plaintiff's pleading. Nevertheless, between September 21, 2019 through the date Mr. Feeny executed the declaration in support of this Notice of Removal, TTX employed at least 568 non-exempt individuals (in the aggregate). (Feeny Decl. ¶ 3.)

This four-year lookback period corresponds within the statutory limitations period of the Unfair Competition claim alleged by Plaintiff. Bus & Prof. Code § 17208; Complaint ¶¶ 112-121, Prayer. Thus, CAFA's class size requirement is satisfied.

### C.  CAFA's $5 Million Amount in Controversy Requirement Is Met

17. CAFA authorizes the removal of class action cases in which the amount in controversy for all class members exceeds $5 million. 28 U.S.C. § 1332(d).

18. Under CAFA, the "District Court [must] determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [a plaintiff's] proposed class and determine whether the resulting sum exceeds $5 million." *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345, 1348 (2013). Courts look to the allegations in the complaint in determining the amount in controversy. *LaCross v. Knight Trans. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) ("[O]ur first source of reference in determining the amount in controversy [is] plaintiff's complaint"). "In determining the amount in controversy, the Court accepts the allegations contained in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor on every claim." *Henry v. Central Freight Lines, Inc.*, 692 F. App'x 806 (9th Cir. 2017).

19. Plaintiff seeks the recovery of meal and rest period premium pay, unpaid wages (including overtime wages), itemized wage statement penalties, and waiting time penalties, on behalf of himself and the putative classes. (*See* Ex. 1, Complaint.) The Complaint, based on the allegations in it, satisfies the $5 million threshold for CAFA removal.[1] *See* 28 U.S.C. § 1332(d).

---

[1] In alleging the amount in controversy for purposes of CAFA, TTX does not concede in any way that the allegations in the Complaint are accurate, or that Plaintiff is entitled to any of the monetary relief requested in the Complaint. Nor does TTX concede that any or all putative class members are entitled to any recovery in this case, or are appropriately included in the action. TTX also does not concede Plaintiff can bring claims on class or representative basis.

### 1. Relevant Data

20. From September 21, 2019 to the Notice of Removal, TTX employed, in the aggregate, at least 568 non-exempt employees in California. (Feeny Decl., ¶ 3.) Those employees worked approximately 68,902 workweeks or at least 34,544 pay periods. (*Id.*) The average hourly rate during the alleged class period was at least $24.67. (*Id.*)

21. From September 21, 2020, to the present, TTX discharged at least 197 non-exempt employees in California. (Feeny Decl., ¶ 4.) The average hourly rate during this period was at least $24.67. (*Id.*)

22. From September 21, 2022, to the present, TTX issued at least 10,355 biweekly wage statements to at least 377 non-exempt employees in California. (Feeny Decl., ¶ 5.)

### 2. Waiting Time Penalties

23. Plaintiff alleges "Defendants willfully failed to pay Plaintiff and members of the Classes who are no longer employed by Defendants the earned and unpaid wages set forth above, including but not limited to, overtime wages, minimum wages, and/or meal/rest period premiums, either at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ." (Complaint ¶ 37.) Plaintiff contends he "and members of the Terminated Sub Class are entitled to recover civil penalties, attorney's fees, costs, and interest thereon." (Complaint ¶ 111.)

24. The unpaid wages Plaintiff alleges (and seeks) in the Complaint stem, in part, from unpaid minimum wages and overtime and meal and rest period issues (Ex. 1, Complaint ¶ 37).

25. California Labor Code section 203 provides "[i]f an employer willfully fails to pay … any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1398 (2010).

1  Although Plaintiff apparently seeks a termination subclass for four years, this is not
2  the proper limitation period as the limitations period for waiting time penalty claims
3  is three years. *Id.* at 1400. TTX uses the proper limitations period in its calculations of
4  the amount in controversy of three years.

5       26.    From September 21, 2020, to the present, TTX discharged at least 197
6  non-exempt employees in California. (Feeny Decl., ¶ 4.) The average hourly rate
7  during this period was at least $24.67. (*Id.*) This equals an average daily rate (8 hours)
8  of approximately $197.36. (*Id.*)

9       27.    Therefore, based on Plaintiff's claim of entitlement to statutory penalties
10 premised on violation of Labor Code § 201 and 202, the amount in controversy for
11 waiting time penalties is at least $**1,166,397** ($197.36 daily rate ($24.67 per hour x 8
12 hours) x 30 days x 197 putative class members). *See Crummie v. CertifiedSafety, Inc.*,
13 No. 17-CV-03892-RS, 2017 WL 4544747, at *3 (N.D. Cal. 2017) (finding it
14 "completely reasonable" for the Defendant to assume the maximum, 30-day period of
15 waiting time penalties where the allegations support the assumption).

### 3. Wage Statement Penalties

17      28.    Plaintiff alleges "During the relevant time period, Defendants have
18 knowingly and intentionally provided Plaintiff and members of the Classes with
19 uniform, incomplete, and inaccurate wage statements. For example, Defendants issued
20 uniform wage statements to Plaintiff and members of the Classes that fail to correctly
21 list: gross wages earned; total hours worked; net wages earned; and all applicable
22 hourly rates in effect during the pay period, including rates of pay for overtime wages
23 and/or meal and rest period premiums, and the corresponding number of hours worked
24 at each hourly rate." (Complaint ¶ 33.) Plaintiff concludes that "Because Defendants
25 failed to provide the correct net and gross wages earned, applicable rates of pay, and
26 number of total hours worked on wage statements, Plaintiff and members of the
27 Classes have been prevented from verifying, solely from information on the wage
28 statements themselves, that they were paid correctly and in full. Instead, Plaintiff and

members of the Classes have had to look to sources outside of the wage statements themselves and reconstruct time records to determine whether in fact they were paid correctly and the extent of underpayment, thereby causing them injury." (Complaint ¶ 36.) Because of this, "Plaintiff and the members of the Classes herein seek damages and penalties pursuant to Labor Code section 226(e) for Defendant's violations of Labor Code section 226(a)." (Complaint ¶ 103.)

29. A one-year statutory period applies to Plaintiff's claim for wage statement penalties. Cal. Code Civ. Proc. § 340(a); *Falk v. Children's Hospital Los Angeles*, 237 Cal.App.4th 1454, 1469 (2015). Labor Code § 226(e) provides for the greater of all actual damages or $50.00 for the initial pay period in which a violation occurred and $100.00 for each subsequent pay period in which a violation occurred, up to $4,000.00 per putative class member. Lab. Code § 226(e).

30. From September 21, 2022 to the present, TTX issued at least 10,355 wage statements to at least 377 non-employees in California. (Feeny Decl., ¶ 5.) No employee received more than 40 wage statements during this period, so the penalty per person cannot exceed $4,000.

31. Based on the above, the total amount of potential wage statement penalties to putative class members in controversy is at least **$1,016,650** (377 initial wage statements x $50 = 18,850; 9,978 [10,355 – 377] subsequent wage statements x $100 = $997,800 [$18,850 + $997,800 = $1,016,650]).

### 4.     Unpaid Time from Off the Clock Work

32. Plaintiff alleges that "[d]uring the Class Period, upon information and belief, Defendants had, and continue to have, a company-wide policy of failing to pay all overtime wages. Specifically, Plaintiff and other non-exempt employees were and are required to undergo a security check prior to clocking-in. This would take approximately 10-15 minutes off-the-clock, daily. Further, after clocking-out after a shift, Plaintiff was required to return to his workstation and complete his work duties such as clearing materials and picking up tools. This would take approximately 15

1  minutes." (Complaint ¶ 25.) Plaintiff adds: "Because Plaintiff and members of the
2  classes worked more than 8 hours per day and/or 40 hours per week, some of this time
3  would have been overtime wages. Therefore, Plaintiff and members of the Classes
4  were not paid all overtime wages." (Complaint ¶ 26.) Thus, in sum, Plaintiff alleges at
5  least 25 minutes of unpaid time per shift.

6    33.   The statute of limitations for a claim under the UCL is four years. Cal.
7  Bus. & Prof. Code § 17208. Under the UCL, an individual may recover unlawfully
8  withheld wages as a form of restitution. *Cortez v. Purolator Air Filtration Prods. Co.*,
9  23 Cal. 4th 163, 173 (2000). (See Ex. 1, Complaint ¶ 115.)

10    34.   From September 21, 2019 to the Notice of Removal, TTX employed, in
11  the aggregate, at least 568 non-exempt employees in California. Those employees
12  worked approximately 68,902 workweeks. (Feeny Decl., ¶ 4.)

13    35.   Based on the above and assuming a base hourly rate for all employees of
14  at least $24.67, the total amount of potential outstanding unpaid wages to putative class
15  members in controversy is at least $3,541,275 (5 day workweek x $24.67 x 25 minutes
16  per shift x 68,902 workweeks.)[2]

### 5.    Meal and Rest Period Violations

    36.   As to meal periods, Plaintiff alleges "Defendants have a company-wide policy of failing to provide compliant meal breaks to Plaintiff and members of the classes. Rather, management would require Plaintiff and members of the classes to continue working resulting in missed and late meal periods. As a result, Plaintiff and members of the Classes were forced to work in excess of five (5) hours before taking a meal period." (Complaint ¶ 29.) Plaintiff adds: "Defendants routinely failed to provide Plaintiff and the members of the Classes with such meal periods without duty." (Complaint ¶ 76.)

---

[2] This calculation uses the base hourly rate, not the overtime rate, although Plaintiffs allegations appear to support using the overtime rate.

37. As to rest periods, Plaintiff alleges "During the relevant time period, Defendants regularly failed to authorize and permit Plaintiff and members of the Classes to take a ten (10) minute rest period per each four (4) hour period worked or major fraction thereof. Specifically, due to demanding work assignment, rest breaks were frequently missed." (Complaint ¶¶ 31-32.) Plaintiff adds: "Defendants routinely failed to provide Plaintiff and the members of the Classes with such paid rest periods without duty." (Complaint ¶ 91.)

38. Plaintiffs' seventh cause of action for violation of the Unfair Competition Law ("UCL") is premised on the conduct "described in this Complaint," including the above alleged meal and rest period practices. (Ex. 1, Complaint ¶ 115.)

39. The statute of limitations for a claim under the UCL is four years. Cal. Bus. & Prof. Code § 17208. Under the UCL, an individual may recover unlawfully withheld wages as a form of restitution. *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 173 (2000). A plaintiff may seek to recover meal and rest period premium pay as a form of restitution under the UCL, under the theory that premium pay constitutes wages. *See Naranjo v. Spectrum Sec. Servs.*, 13 Cal.5th 93, 117 (2022) ("missed-break premium pay constitutes wages").

40. 41. From September 21, 2019 to the Notice of Removal, TTX employed, in the aggregate, at least 568 non-exempt employees in California. Those employees worked approximately 68,902 workweeks. (Feeny Decl., ¶ 4.)

41. TTX may employ reasonable assumptions based on the Complaint to determine the amount in controversy. *Arias v. Residence Inn By Marriott, Ltd.*, 936 F.3d 920, 927 (9th Cir. 2019) ("[A]ssumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'") Plaintiffs contend TTX had had a "a company-wide policy of failing to provide compliant meal breaks," "routinely failed to provide Plaintiff and the members of the Classes with such meal periods without duty," and "regularly failed to authorize and permit Plaintiff and members of the Classes to take a ten (10) minute

rest period per … due to demanding work assignment, rest breaks were frequently missed." (Complaint ¶¶ 29, 31-32, 76, 91.) This language indicates that a significant assumed violation rate would be a reasonable assumption. *See, e.g., Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice—or other similar language—and where the plaintiff offers no evidence rebutting this violation rate"). Lesser violation rates are consistently accepted for purposes of the amount in controversy and courts have found "violation rates of 25% to 60% can be reasonably assumed as a matter of law" in similar circumstances. *Avila v. Rue21, Inc.*, 432 F.Supp.3d 1175, 1186, 1189 (E.D. Cal. 2020) (finding a 40% violation rate reasonable based upon the "pattern and practice" allegation); *Bridges v. Dealers' Choice Truckaway Sys., Inc.*, No. 2:20-cv-01620-ODW (SKx), 2020 WL 4937505, at *9 (C.D. Cal., Aug. 24, 2020) (finding 50% is a reasonable violation rate to use for CAFA removal); *Elizarraz v. United Rentals, Inc.*, No. 2:18-CV-09533-ODW (JC), 2019 WL 1553664, at *4 (C.D. Cal. Apr. 9, 2019) (finding a 50% violation rate for a meal period claim and 25% violation rate for a rest period claim to be reasonable because of "pattern and practice" allegations); Oda v. Gucci Am., Inc., No. 2:14-CV-07469-SVW, 2015 WL 93335, at *4-5 (C.D. Cal. Jan. 7, 2015) (upholding assumed 50% violation rate [or 2.5 violations per week per claim; or 5 total] on both meal and rest period claims where plaintiffs alleged that "Plaintiffs and the class members sometimes did not receive all of their meal periods in a lawful fashion" and Defendant "maintained a policy or practice of not paying additional compensation to employees for missed, uninterrupted [sic], and/or timely meal and/or rest periods")

42. Even utilizing an extremely conservative rate of 2 violations per 5-day workweek (i.e., 40%) the meal and rest period premium pay in controversy is approximately of **$6,799,248**. ((Meal: 68,902 workweeks x $24.67 average hourly rate

x 2 violations per workweek = $3,399,624); (Rest: 68,902 workweeks x $24.67 average hourly rate x 2 violations per workweek = $3,399,624.)

### 6. Further Data

43. For purposes of this removal, the claims above are sufficient to support the required $5 million threshold amount in controversy. However, TTX has provided data sufficient to calculate and support, based on Plaintiff's allegations, an even greater amount in controversy. (Feeny Decl., ¶¶ 3-5.) There is no doubt that, as alleged, the amount in controversy exceeds the requisite threshold.

### 7. Attorney Fees

44. Based on the above, TTX has demonstrated there is at least **$12,523,570** ($1,166,397 + $1,016,650 + $3,541,275 + $3,399,624 + $3,399,624) in controversy in waiting time penalties, wage statement penalties, restitution for unpaid wages for alleged off-the-clock work, and meal and rest violations.

45. Plaintiff also seeks an award for attorneys' fees: "attorneys' fees pursuant to Labor Code sections 218.5, section 1021.5, and/or other applicable law." (Ex. 1, Complaint, Prayer, *see also*, *¶¶* 60, 87, 93, 104, 111, and 121.) In the Ninth Circuit, 25% of the total recovery is the "benchmark level" for reasonable attorney fees in class action cases. *Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013). Using this 25% benchmark, courts have included attorney fees for 25% of the total recovery in determining the amount in controversy under CAFA. *Id.* (contemplating inclusion of 25% of total recovery in attorney fees under CAFA); *Rwomwijhu v. SMX, LLC*, No. CV1608105ABPJWX, 2017 WL 1243131, at *6 (C.D. Cal. Mar. 3, 2017) (including fees in calculation, noting that "courts in the Ninth Circuit, including this one, have allowed an estimated fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA"); *Altamirano v. Shadow Indus., Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, at *13 (N.D. Cal. Jan. 14, 2013) (including 25% attorney's fees to increase the amount-in-controversy to above $5 million CAFA threshold).

46. Assuming an award of attorney fees in the benchmark amount of 25% of the total recovery, the amount in controversy for such fees is **$3,130,892** ($12,523,570 x 0.25).

### 8. Summary

47. Based Plaintiff's allegations, the amount in controversy is at least **$15,654,462** ($12,523,570 + $3,130,892). The Complaint satisfies the $5 million threshold.

## IV. VENUE IS PROPER IN THIS COURT

48. Under 28 U.S.C. § 1441(a), this Notice of Removal is filed in the district court of the United States in which the Action is pending. The Superior Court for the County of Riverside is within the Central District of California. 28 U.S.C. § 84(c)(1). As such, venue is proper in this Court because it is the district and division embracing the place where the Action is pending. 28 U.S.C. § 1441(a).

49. The undersigned is counsel of record for Defendant TTX.

50. Under 28 U.S.C. § 1446(a), this Notice of Removal is accompanied by the Declaration of Jesse Ferrantella, and Exhibits 1 to 5 thereto, which constitute a copy of all processes, pleadings, and orders provided to TTX. (Ferrantella Decl. ¶ 7.)

51. As required by 28 U.S.C. §1446(b) and Federal Rule of Civil Procedure 6(a), this Notice of Removal was filed timely as detailed above.

52. As required by 28 U.S.C. §1446(d), TTX provided Notice of Removal to Plaintiff through his attorneys of record.

53. As required by 28 U.S.C. §1446(d), a copy of the original Notice of Removal will be filed with the Superior Court of the State of California, for the County of Riverside.

54. If this Court has a question regarding the propriety of this Notice of Removal, TTX respectfully requests it issue an Order to Show Cause so it may have an opportunity to provide additional briefing on the grounds for this removal, including further detail regarding the full amount in controversy.

## V. CONCLUSION

For the foregoing reasons, TTX removes the above-entitled action to the United States District Court for the Central District of California.

DATED: November 27, 2023

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ *Spencer C. Skeen*
Spencer C. Skeen
Jesse C. Ferrantella
Cameron O. Flynn
Attorneys for Defendant TTX COMPANY